**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X     Case No.:
KEMAR MINTO,

                                                  Plaintiffs,          **COMPLAINT**

                        -against-                                      **PLAINTIFF DEMANDS**
                                                                       **A TRIAL BY JURY**
165 CAFÉ CORP., (d/b/a HUDSON GRILLE) and BRIAN
MAHON, *Individually,*

                                                  Defendants.
--------------------------------------------------------------------X

        Plaintiff KEMAR MINTO (hereinafter "Plaintiff" or "Plaintiff MINTO"), by and through

his attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the

Defendant 165 Cafe Corp., d/b/a Hudson Grille (hereinafter "Defendant HG") and Defendant

Brian Mahon (hereinafter "Defendant Mahon"), upon personal knowledge, as well as upon

information and belief, by alleging and averring as follows:

**Nature of the Case**

1.      Plaintiff MINTO complains pursuant to the discrimination provisions of (i) 42 U.S.C. §

        1981 ("Section 1981") and the New York State Human Rights Law ("NYSHRL"), New

        York State Executive Law § 296, *et seq.,* and seeks damages to redress the injuries he has

        suffered, as a result of being subjected to discrimination on the basis of race (Black), in a

        place of public accommodation, specifically Defendant HG's premises.

**JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is proper under Section 1981, 28 U.S.C. §§ 1331 and 1343.

3.      This Court has supplemental jurisdiction over Plaintiff's claims brought under state law

        pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the Defendant resides within the Southern District of New York and a substantial part of the events or omissions giving rise to the claim occurred therein.

## Parties

5.    Plaintiff MINTO is a Black male.

6.    Plaintiff MINTO is a resident of the state of New York.

7.    At all times material, Defendant 165 Cafe Corp. was and is a domestic corporation duly existing pursuant to, and by virtue of, the laws of the State of New York and owns the entity Hudson Grille ("Defendant" "HG" or "the Restaurant"), with its principal place of business located at 165 Mamaroneck Ave, White Plains, NY 10601.

8.    At all times material, Defendant HG was and is a restaurant that provides hospitality services to the general public.

9.    At all times material, Defendant Brian Mahon ("Defendant Mahon") was and is co-owner of Defendant HG.

10.   At all times material, Defendant HG was and is a place of public accommodation.

11.   Defendant HG and Defendant Mahon will sometimes be collectively referred to herein as "Defendants."

## Material Facts

12.   On or about March 11, 2023, Plaintiff MINTO and his five-year-old son went to Defendant HG to enjoy a lunch with, Kaz, also a Black man.

13.   Plaintiff MINTO was dressed in casual attire wearing sneakers and a hooded sweater.

14.   Plaintiff MINTO entered Defendant HG with his young son and looked for Kaz, hoping to be seated at the front of the Restaurant, either at the bar or at one of several other available

tables in the front area. Plaintiff MINTO did not see Kaz, so he called him to ask where he was seated.

15.    Kaz responded to Plaintiff MINTO that he was seated in the very back of the Restaurant, where he had been placed by Defendant HG staff.

16.    Upon information and belief, Plaintiff MINTO, Kaz, and his son were the only Black patrons in the Restaurant, as far as Plaintiff could see, when Plaintiff MINTO entered the premises.

17.    Plaintiff MINTO immediately noticed that there were no other patrons seated at the back of the Restaurant.

18.    Upon locating Kaz, Plaintiff MINTO noticed Kaz dressed in what appeared to be business attire.

19.    Very soon after Plaintiff MINTO and his son sat down, a Server approached the table and asked what Plaintiff wanted, long before Plaintiff had the opportunity to glance at a menu.

20.    Almost immediately, Plaintiff MINTO felt that he was unwelcome and the employees with whom he interacted were attempting to rush him out.

21.    Confused at the abrupt and swift appearance of the Server, Plaintiff MINTO responded that he needed more time to decide on a drink and a meal.

22.    The employee stood nearby and watched Plaintiff MINTO briefly, after which time the Server approached the table again, asking if he was ready to order.

23.    Again, Plaintiff MINTO asked for more time to look at the menu.

24.    Plaintiff MINTO felt extremely uncomfortable because of the way the Server rushed him and glared at him.

25.    When the Server approached the table a third time, only moments later, Plaintiff MINTO

ordered chicken nuggets and juice for his young son.  However, Plaintiff did not have an opportunity to decide what he wanted for himself and as such, asked if he could have a few more minutes to order.

26.    After Plaintiff MINTO gave the Server the order for his young son, the Server glared at him and left.

27.    Less than five minutes later, two or three male Servers, and one male, who appeared to be a Manager and Plaintiff MINTO later learned was the owner of the restaurant, Defendant Mahon, approached the table suddenly and aggressively.  None of the men were Black.

28.    Plaintiff MINTO immediately noticed the antagonistic body language that all the men displayed as they stood nearby.

29.    At that point, Defendant Mahon angrily told Plaintiff MINTO and Kaz that they needed to "get out." He *erroneously* but authoritatively stated that Plaintiff was a Black man that had allegedly been to Defendant HG the prior week and committed credit card fraud, and he needed to leave.

30.    Defendant Mahon made this statement loudly and in the presence of Plaintiff MINTO's young son, who became clearly distraught.

31.    Plaintiff MINTO, taken aback by the blatantly false accusation, repeatedly told Defendant Mahon that he had never been to Defendant HG before and that he was accusing the wrong person [Plaintiff MINTO] of having committed fraud at the restaurant.

32.    However, Defendant Mahon disregarded Plaintiff MINTO's response and told him again to "get out," and added that the police were waiting outside the restaurant, in a further attempt to humiliate and intimidate Plaintiff and his young child.

33.    The exchange continued, with Defendant Mahon becoming more aggressive and moving

physically closer to Plaintiff MINTO, as the tension escalated in the presence of Plaintiff's young son.

34.    Defendant Mahon turned to Kaz and aggressively told him that he also had to leave the restaurant.

35.    Kaz was shocked and confused and asked, "What are you talking about?"

36.    Plaintiff MINTO again attempted to explain to the group of men who had surrounded him that he was not the same man who committed fraud, no less than six times.

37.    By this time, Plaintiff MINTO's young son was becoming extremely scared and intimidated by the heated exchange that continued to escalate by a group of men who had physically surrounded him and his father.

38.    Plaintiff MINTO's young son moved closer to Plaintiff, clearly and visibly distraught, and began cowering under his father's arm.

39.    Yet, this visible exhibition of emotional and physical distress in Plaintiff MINTO's small child did not deter the men from continuing their harassing and abusive conduct against Plaintiff, as they continued to racially profile him and accuse him of being a Black man who had allegedly committed a crime.

40.    The men did not, at any time, attempt to pull Plaintiff MINTO aside to speak with him privately, out of his young son's presence, about the outrageous allegations against him, or have a constructive conversation with him, in light of Plaintiff's repeated statements that he was being wrongfully accused.

41.    The men chose to viciously profile Plaintiff MINTO and refuse him the services of Defendant HG, in the presence of Plaintiff's young son, cruelly subjecting Plaintiff to significant trauma as a Black man.

42.     Several times during this interaction, Defendant Mahon walked away from the table where Plaintiff was seated and outside of Plaintiff MINTO's view, only to return a few moments later to continue his rant and demand that the table of Black men vacate the premises immediately.

43.     When Plaintiff MINTO again communicated to the employees that he was not the man who allegedly committed fraud at the Restaurant, Defendant Mahon responded that he did not care, and that Plaintiff needed to "get out" anyway.

44.     Plaintiff MINTO, feeling increasingly threatened by the aggressive employees who surrounded the table progressively more closely throughout the heated exchange, reacted to the stress of the traumatic and dangerous situation in which he was placed by the Defendant HG employees, stood up firmly and emphatically said to the employees, "Stop talking to me like that in front of my son!"

45.     Plaintiff MINTO's young son, feeling increasingly distressed by the aggressive, hostile, and threatening behavior of the men who were antagonizing him and his father, began to cry.

46.     Yet, none of the adult males accosting the young child, stepped back, even for a moment, to refrain from causing Plaintiff and his son visible stress, pain, and trauma, thus completely disregarding the humanity of the small child and his father, Plaintiff MINTO.

47.     Feeling increasingly physically threatened by the aggressive employees by whom he remained surrounded, Plaintiff MINTO told them to back up.

48.     At that point, Plaintiff MINTO sat back down and told Defendant Mahon and the surrounding employees that he would not be leaving and that he came to the restaurant to eat and have a business meeting, further stating that he was going to call the police.

49.  Nonetheless, Defendant Mahon came within inches of Plaintiff MINTO, bent over him to get even closer to his face, still in the presence of his terrified child, and again told Plaintiff MINTO, "I'm not giving you any food. Get out!"

50.  Plaintiff MINTO remained seated at the table and called the police.

51.  When Plaintiff MINTO completed the call, the employees surrounding him began to slowly leave the table, though they frequently glared back at Plaintiff MINTO.

52.  As employees walked by, Plaintiff MINTO implored them to look at the prior week's video footage of the customer who [allegedly] committed the fraud and compare the man's appearance in the video to Plaintiff's appearance to confirm that Plaintiff was not the person who allegedly committed fraud at the restaurant.

53.  Just before the police arrived, Plaintiff MINTO's partner arrived at the Restaurant, after Plaintiff had asked her to pick up his son, in order to take him away from the traumatic experience to which he was cruelly subjected by the Defendants.

54.  When the police arrived, they entered through the back of the restaurant. Plaintiff MINTO identified himself as the caller, and the police approached the table.

55.  Plaintiff MINTO began to explain the exchange to the police.

56.  While Plaintiff MINTO was describing the exchange, Defendant Mahon returned to Plaintiff's table.

57.  At this point, in the presence of the police, which Plaintiff MINTO had called to the Restaurant, Defendant Mahon told Plaintiff that he and the staff made an error in falsely accusing Plaintiff and wrongfully ordering him to leave.

58.  Subsequently, immediately after having abusively refused to service him, his young son, and Kaz as Black men, Defendant Mahon told Plaintiff MINTO, "If you want to stay, you

could stay."

59.    Incredibly, after the aggressive and hostile attack by Defendant Mahon and staff, Defendant merely offered Plaintiff MINTO, his son, and Kaz a free meal and a drink, adding utter insult to their injury.

60.    Plaintiff MINTO and Kaz declined and got up to leave. Plaintiff gave his statement to the police before he left Defendant HG.

61.    Plaintiff MINTO quickly exited to ensure that he left before the police, as he did not feel safe at Defendant HG without the police present.

62.    Defendant HG outrageously refused Plaintiff MINTO services as a Black man.

63.    Defendant HG acted intentionally and intended to harm Plaintiff MINTO.

64.    Defendant unlawfully discriminated against, humiliated, degraded, and belittled Plaintiff MINTO.

65.    As a result, Plaintiff MINTO has suffered loss of rights and severe emotional and physical distress, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

66.    Defendant HG acted maliciously, willfully, outrageously, and with full knowledge of the law against Plaintiff MINTO.

67.    As such, Plaintiff MINTO demands punitive damages against Defendant HG.

**First Cause of Action for Discrimination**
**Under Section 1981**

68.    Plaintiff MINTO repeats and realleges each and every allegation stated herein.

69.    42 U.S.C. § 1981 states:

> **(a) All persons within the jurisdiction of the United States shall have the same right in every State** and Territory **to make and enforce contracts,** to sue, be parties, give evidence, and **to the full and equal benefit of all laws** and proceedings **for the security of** persons and **property as is enjoyed by white**

**citizens**, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b)** For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c)** The rights protected by this section are protected **against impairment by nongovernmental discrimination and impairment under color of State law.**

70.     42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcing of contracts, which also includes those created in places of public accommodation.

71.     Plaintiff MINTO was denied service at Defendant HG's restaurant based on race.

72.     Defendants violated the section cited as set forth herein.

73.     Plaintiff MINTO is entitled to the maximum amount of damages allowed under this statute herein.

**Second Cause of Action for Discrimination
Under the New York State Executive Law**

74.     Plaintiff MINTO repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75.     New York State Executive Law § 296(2)(a) provides that:

> It shall be an unlawful discriminatory practice for any person, being the **owner**, lessee, proprietor, **manager**, superintendent, **agent** or employee **of any place of public accommodation**, resort or amusement, **because of the race**, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital **status of any person, <u>directly or indirectly,</u> to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof**, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status, or that the patronage or custom thereat

of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

76.   Defendants violated the section cited as set forth herein.

77.   Plaintiff MINTO is entitled to the maximum amount of damages allowed under this statute herein.

## **Jury Demand**

78.   Plaintiff MINTO requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff MINTO respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Section 1981 and the NYSHRL in that Defendants discriminated against Plaintiff MINTO in a place of public accommodation on the basis of race (Black);

B.   Awarding damages to Plaintiff MINTO for all damages resulting from Defendants unlawful harassment, discrimination, and conduct and to otherwise make Plaintiff whole for all losses suffered because of such unlawful practices;

C.   Awarding Plaintiff MINTO compensatory damages for mental and emotional injury, distress, pain, suffering and injury to Plaintiff's reputation in an amount to be proven;

D.   Awarding Plaintiff MINTO punitive damages;

E.   Awarding Plaintiff MINTO attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

F.   Awarding Plaintiff MINTO such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants unlawful practices.

Dated:  New York, New York
           December 8, 2023

                     **PHILLIPS & ASSOCIATES,**
                     **ATTORNEYS AT LAW, PLLC**

                     *s/Dorina Cela*
                     Dorina Cela, Esq.
                     Lisa Marie George, Esq.
                     *Attorneys for Plaintiff*
                     45 Broadway, Suite 430
                     New York, New York 10006
                     (212) 248-7431
                     dcela@tpglaws.com
                     lgeorge@tpglaws.com